UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE EMMA REGAN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NANCY A. BERRYHILL,<br><br>　　　　Defendant. | Case No.17-cv-02658-EDL<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 15, 18 |

On May 8, 2017, Plaintiff Julie Emma Regan filed a complaint for judicial review pursuant to 42 U.S.C. Section 405(g) of the Social Security Administration Commissioner's decision to deny her applications for disability benefits under Titles II and XVI. Both Plaintiff and the Commissioner have filed motions for summary judgment. For the reasons set forth below, the Court grants Plaintiff's motion for summary judgment, denies Defendant's motion for summary judgment, and remands for further proceedings to reconsider the issue of Plaintiff's credibility as to the intensity, persistence, and limiting effects of her symptoms, as well as Plaintiff's husband's written testimony.

**I.　BACKGROUND**

Plaintiff was 57 years old on the alleged date of the onset of her disability. AR 266-67. She obtained a high school education. AR 268. Her past work was as an administrative clerk for an electronics company. AR 268. In her applications, she claimed to be disabled because of mental difficulties, diabetes, and tingling in her hands and legs. AR 267.

**A.　Procedural History**

On May 23, 2012, Plaintiff applied for disability benefits under Titles II and XVI of the Social Security Act, alleging a disability onset date of June 30, 2011. AR 226-32. Her

applications were denied. AR 120-25. She requested reconsideration of the decision, but that request was denied. AR 126-30. She then requested a hearing with an Administrative Law Judge ("ALJ"). AR 133-34. The originally scheduled hearing on January 14, 2015 was continued to July 30, 2015 so that Plaintiff could obtain legal representation and undergo a consultative medical examination. AR 53.

The ALJ issued an unfavorable decision denying Title II disability benefits to Plaintiff. AR 31-41. Plaintiff appealed the decision to the Appeals Council. AR 18-21. The Appeals Council denied the appeal on March 14, 2017. AR 1. On that date, the ALJ's decision became final. Plaintiff filed this lawsuit on May 8, 2017.

Plaintiff filed a motion for summary judgment on September 11, 2017. Dkt. No. 15. Defendant opposed Plaintiff's motion and filed its own motion for summary judgment on November 9, 2017. Dkt. No. 18. Plaintiff filed her reply brief on November 16, 2017. Dkt. No. 19.

### B. Plaintiff's Medical History

The earliest documents in Plaintiff's medical record show that she received medical care starting in 2009 at Kaiser Permanente, and the physician she saw most frequently was Yasmeen Wengrow, M.D. On June 14, 2010, Plaintiff saw Dr. Wengrow and complained of knee pain, achiness, and fatigue. AR 470. Based on a review of the medical records, this appears to be the first time Plaintiff raised these symptoms. Dr. Wengrow noted the recent death of Plaintiff's brother, her mother's illness, and Plaintiff's job layoff, all of which occurred in the six months prior to the appointment. AR 470. On May 18, 2011, Plaintiff returned to Dr. Wengrow to report ongoing fatigue that caused her to sleep throughout most of the day. AR 482. Dr. Wengrow noted that Plaintiff was not taking her antidepression medications and Plaintiff did not believe her depression was contributing to her fatigue. AR 482. In June 2012, Plaintiff asked Dr. Wengrow to consider whether she had developed fibromyalgia. AR 439.

On December 11, 2012, Plaintiff received a comprehensive psychiatric evaluation from Arudra Bodepudi, M.D. AR 487-89. The evaluation was conducted for Plaintiff's Social Security application. AR 487. Dr. Bodepudi's report noted Plaintiff's history of depression, anxiety and

2

stress. AR 487. Although she admitted to feeling "helpless, hopeless sometimes," Plaintiff also denied feelings of "worthlessness, suicidality, and Anhedonia." AR 487. Plaintiff explained that she is unable to engage in activities because of her aches and pains. AR 487. The report noted that she saw a psychologist at Tri City Health Center every two weeks and would seek a consultation with a psychiatrist in the near future. AR 487.

During a mental status examination, Dr. Bodepudi noted that Plaintiff was in no apparent discomfort and her gait was okay. AR 488. She was cooperative, her mood and effect were appropriate, and her speech was normal in rate and volume with occasional sad tones. AR 488. She was goal oriented in thought and she denied suicidal and homicidal ideation, as well as delusions and paranoia. AR 488. She was alert and oriented, her intellectual functioning was average, and her fund of knowledge was excellent. AR 488.

Dr. Bodepudi diagnosed her with Depressive D/O, NOS, with panic attacks in her previous history. AR 488. She noted that she was on appropriate medication, although it may need adjustment, and her prognosis was good. AR 489. She found no impairment in understanding, remembering, and completing simple instructions; no impairment in understanding, remembering, and completing complex instructions; no impairment to interact appropriately with supervisors, coworkers, and the public; and moderate impairment in her ability to perform work activities on a consistent basis due to pain, not due to psychiatric reasons. AR 489. She opined that she would have no difficulty dealing with the usual stresses of a competitive work environment. AR 489.

Records indicate that Plaintiff began receiving treatment at Tri City Health in 2012 under the care of Aruna Reddy, M.D., and Jan Dickey, M.D. Both doctors referred Plaintiff for x-rays to investigate her complaints of pain. AR 650-52. X-rays taken of her cervical spine on July 10, 2012 revealed minimal bilateral uncovertebral spurring without significant foraminal stenosis. AR 652. There was no radiographically apparent discogenic disease. AR 652. X-rays of her elbows on February 21, 2013 were normal. AR 650. X-rays of her hips on February 21, 2013 showed mild arthritic changes. AR 651.

Plaintiff also saw a psychologist, Karla Espinosa, Ph.D., M.P.H., at Tri City Health from July 2012 to May 2013. AR 503-24. Dr. Espinosa's notes include numerous references to

3

1 Plaintiff's chronic pain and the effect that her inability to perform normal activities had on her
2 mood. Id. Dr. Espinosa's records also include copies of journal entries in which Plaintiff
3 described how she spent her days. AR 505-09, 511-17, 519-23

4 Dr. Espinosa referred Plaintiff to a psychiatrist, G. Versales, M.D., at Pathways to
5 Wellness Medication Clinic, and she saw the psychiatrist on December 19, 2012 and February 20,
6 2013. AR 494-502. During the initial assessment, she was diagnosed with General Anxiety
7 Disorder, NOS, and possible fibromyalgia. AR 500, 633. Plaintiff noted her chronic pain as
8 "recent life changes/stressors." AR 494. With respect to the anxiety diagnosis, the psychiatrist
9 noted during both visits that her condition was stable. AR 495, 501. At some point, Plaintiff
10 began seeing Mythri Gollapalle, M.D. as her primary care physician. Because of her stable
11 condition, Dr. Versales discharged Plaintiff to Dr. Gollapolle's for management of her care and
12 medication. AR 632. Dr. Versales noted that Plaintiff was having blood work done to help
13 diagnose her chronic pain. AR 632. That blood work was completed on February 20, 2013, and
14 indicated that Plaintiff had a high rheumatoid factor. AR 641.

15 On September 20, 2013, Plaintiff received a rheumatology evaluation from Dr. Neuwalt.
16 AR 595. Dr. Gollapalle referred her to Dr. Neuwalt because of her chronic pain symptoms. AR
17 595. During the examination, Dr. Neuwalt found moderate muscle weakness, definite swelling,
18 and tender points, and diagnosed Plaintiff with fibromyalgia. AR 595.

19 On October 11, 2013, P.M. Balson, M.D., reviewed her claim upon reconsideration. AR
20 108-18. With respect to her psychiatric condition, he agreed with the original assessment that her
21 condition was not severe. AR 113. He noted that the medical record demonstrated that she was
22 stable on her medications and that she has situational depression and anxiety, which Plaintiff
23 describes as being driven by her pain. AR 113.

24 On July 2, 2014, Plaintiff saw Dr. Gollapelle in order to obtain a new rheumatology
25 referral. AR 581-85. Dr. Gollapella routinely noted Plaintiff's complaints of chronic pain and
26 fatigue. AR 536-43, 561, 576, 581. Dr. Gollapalle ordered x-rays and referred Plaintiff to Sabiha
27 Rasheed, M.D. for a rheumatology consultation. AR 588. In November 2014, Dr. Rasheed
28 diagnosed Plaintiff with osteoarthritis of the cervical, lumbar spine, and hands, and mild

4

osteoarthritis of the hips. AR 588. Dr. Rasheed prescribed Sulindac, a glucosamine chondroitin supplement, and advised Plaintiff to do neck, lower back, and hand exercises. AR 588. Dr. Rasheed did not include an assessment of Plaintiff's functional limitations.

In order to obtain an independent medical opinion and a functional assessment of Plaintiff's condition, the ALJ sent Plaintiff to Eugene McMillan, M.D. for an internal medical evaluation on February 27, 2015. AR 661-73.[1] At this evaluation, Plaintiff complained of diabetes and fibromylagia. AR 661. With respect to the second condition, Plaintiff explained that she began experiencing fatigue in 2009 and generalized pain in 2010. AR 661. She said that she had tried various medications for her pain, including Lyrica, gabapentin, prednisone, and sulindac. AR 662. After a physical and neurological evaluation, Dr. McMillion opined as to her functional capacity assessment. AR 663-64. He found that she could stand and walk for at least six hours in an eight-hour work day. AR 664. He found no limitations on the amount of time she could sit. AR 664. He concluded that she could stoop, kneel, crouch, or crawl for more than one third of a work day. AR 664. She would be able to occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. AR 664. He found no limitations on Plaintiff's ability to reach in all directions, as well as no manipulation and environmental limitations. AR 664.

In March 2015, Plaintiff was referred to Daniel Dal Corso, Psy.D., for an evaluation. AR 752. She saw Dr. Dal Corso on March 30, 2015, and he noted his impression that she had chronic pain syndrome and major depressive disorder, recurrent episode. AR 764. His treatment plan encouraged Plaintiff to follow up with a psychiatrist for depression medication and to consider attending the chronic pain program. AR 765.

On July 27, 2015, Plaintiff's rheumatologist Peter Laurence Hendler, M.D., diagnosed her with "classic Fibromyalgia" because of "widespread severe pain, and very tender trigger points, [her] disturbed sleep and daytime fatigue." AR 674. Dr. Hendler also noted that she had already tried to take Nortriptyline, Lyrica, and Gabapentin without any noticeable benefit. AR 674. Dr.

---

[1] Plaintiff was previously assessed by Frank Chen, M.D. on December 15, 2012. AR 490-92. According to the ALJ, Dr. Chen was removed from the Social Security Administration's medical panel. AR 53. The ALJ did not take Dr. Chen's assessment into account in deciding Plaintiff's claim. AR 39 n.2.

Hendler did not include an assessment of Plaintiff's functional limitations.

### C. ALJ Hearing

The ALJ held a hearing on July 30, 2015 in Oakland, California. AR 63-91. Plaintiff was not represented by counsel at the hearing. AR 66. Plaintiff brought two witnesses with her to the hearing. AR 66. Because of the limited time available at the hearing, the ALJ left the record open for ten days after the hearing to give Plaintiff an opportunity to submit a letter that summarized the testimony that her witnesses intended to give. AR 86. If the witnesses submitted letters, the ALJ said that he would give their letters full weight as if they had testified at the hearing. AR 86. Plaintiff's husband Neil Regan submitted a letter to the ALJ on August 3, 2015. AR 399-401.

#### 1. Plaintiff's Testimony

Plaintiff explained that she has been diagnosed with diabetes, fibromyalgia, and hypertension. AR 72. She said that her most limiting medical condition however, is her chronic fatigue, which makes it impossible for her to complete tasks she used to be able to do. AR 72. She testified that as a result of the fatigue she cannot work or even clean her house. AR 72. She also experiences trouble sleeping because she is up all night in pain. AR 72.

With respect to her work history, she testified that she was last employed at ETM Electromatic in Newark, California, in 2009. AR 72-73. Her job title was administration clerk. AR 73. In that position, she worked on the computer, filed documents, and attended meetings. AR 73. She left the job in 2009 during a company-wide layoff. AR 74. She testified that before the layoff she was sick, and that she would fall asleep at her desk and call in sick frequently. AR 74. After being laid off, Plaintiff looked for work until 2011 when she became too sick to continue her search for new employment. AR 74-75.

The ALJ asked Plaintiff to describe her daily activities. Plaintiff explained that she lives with her husband and sister-and-law, and she usually does not start her day until two or three o'clock in the afternoon because she cannot sleep at night. AR 75-76. Plaintiff said she can take a shower, but even that can exhaust her. AR 75. For meals, Plaintiff testified that she is limited to cooking something quickly, such as microwaving food, because she cannot stand in the kitchen to cook a full meal. AR 76. During the day, she explained that she normally does not do much of

anything, although it depends on the day. AR 77. She testified that she may need to attend a doctor appointment, or take her mother or husband to one of their doctor appointments. AR 77. Otherwise, she said that she usually stays in the house, except for possibly a short walk around the house for exercise. AR 78. She testified that she does the laundry, cleans the dishes, and tries to clean up after herself, but when she does that she will be forced to stay in bed for a day or two afterward because of the resulting pain and fatigue. AR 82.

Plaintiff explained that her main activity is to sleep. AR 79. She will otherwise pray or read the bible to try to make the pain go away. AR 79. She said she does not invite friends over to her home for social visits because she does not feel like seeing anyone. AR 79. She contrasted this with her former active lifestyle when she would attend church and socialize with friends outside of the house. AR 79.

She testified that she still drives a car. AR 80. The ALJ asked the farthest she has driven in the last year, and she explained that she drove from her home in Fremont to Los Angeles and back to take her husband to see his children, although that was a hard trip for her and she had to keep stopping to sleep. AR 80. In the end, the trip to Los Angeles took her about ten hours to complete. AR 80.

To alleviate the pain she experiences, Plaintiff applies medicated creams to the parts of her body that hurt. AR 76. She also takes sulindac and sometimes uses a TENS machine to help with the pain. AR 77-78.

### 2. Vocational Expert Testimony

Robert Cottle testified at the hearing as a vocational expert. Mr. Cottle testified that Plaintiff's past relevant work was the one job as an administrative clerk, and that job is classified as DOT listing 209.362-010, SVP-4, light work. AR 83.

The ALJ used Dr. McMillan's residual functional assessment to pose a hypothetical to Mr. Cottle. AR 83. He asked if Plaintiff would be able to perform the requirements of this job if she were limited to light work with occasional postural activities, and she were to avoid concentrated exposure to respiratory irritants. AR 83. Mr. Cottle testified that Plaintiff would be able to do the administrative clerk job with those limitations. AR 83.

7

The ALJ followed-up on the previous hypothetical and asked if Plaintiff would still be able to do her past relevant work with the same limitations at the sedentary level. AR 83. Mr. Cottle confirmed that she could not do her past relevant work because that was at a light exertional level, but she would have transferable skills for sedentary jobs. AR 83-84. For example, Mr. Cottle testified that she could do the job of an election clerk or charge account clerk. AR 84.

The ALJ asked Mr. Cottle if Plaintiff would be able to do work in the general economy if she could only work a less than eight-hour work day. AR 84. Mr. Cottle said she would not be able to perform any work in the general economy under those work conditions. AR 84. He also testified that she would not be able to maintain employment in unskilled jobs in the general economy if she missed work two or three times a month due to pain or illness. AR 84. He testified that Plaintiff also would not be able to maintain this type of employment if she had trouble concentrating and was off task up to 25% of the time. AR 85-85.

### D. ALJ's Decision

#### 1. Step One -- Substantial Gainful Activity

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of June 30, 2011 through her last insured date of December 31, 2014. AR 36.

#### 2. Step Two -- Severe Impairment(s)

At step two, the ALJ concluded that Plaintiff had severe impairments of diabetes mellitus type 2 and fibromyalgia. AR 36. He explained that her medical records indicate that she also has physical impairments of hypertension, GERD, and allergic rhinitis, but those appear to be controlled by medication and are not severe. AR 36.

The ALJ also examined the medical record with respect to Plaintiff's diagnoses of anxiety and depressive disorder. AR 37. He found that her treating source at Pathways and the consultative examiner, Dr. Bodepudi, concluded that her symptoms were not more than mild. AR 37. The ALJ noted that Dr. Bodepudi diagnosed her with depressive disorder with a history of panic attacks, but found that she had few current symptoms and no functional limitations. AR 37. He also noted that she was seen twice at Pathways by a psychiatrist who diagnosed her with

generalized anxiety disorder, but she did not return for additional treatment and the psychiatrist discharged her ongoing care to her primary care doctor at Tri City Health. AR 37. In concluding that she did not have a severe impairment from her anxiety or depressive disorder, the ALJ relied on the opinions of the state agency reviewer, Dr. Belson, and consulting psychologist Dr. Dal Corso. AR 37. Neither doctor found that she had a severe mental impairment. AR 37.

### 3. Step Three -- Listed Impairment(s)

The ALJ next concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 37-38. The ALJ determined that fibromyalgia, which is not listed, did not medically equal a listing, even when combined with diabetes mellitus type 2, based on the medical record. AR 37. Diabetes mellitus type 2 is also not a listed impairment for adults as of June 7, 2011. AR 38.

### 4. Step Four -- Past Relevant Work

At step four, the ALJ determined that Plaintiff has a residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. Part 404.1567(b), which means that she could lift and carry ten pounds frequently and 20 pounds occasionally and sit, stand, or walk for six hours out of an eight-hour work day, except that she could occasionally climb, balance, stoop, kneel, crouch, and crawl. AR 38. Under this RFC, Plaintiff should also avoid concentrated exposure to respiratory irritants. AR 38. Consistent with this RFC, the ALJ concluded that Plaintiff was capable of performing her past relevant work as an administrative clerk. AR 40.

In reaching this conclusion, the ALJ found that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms of mental impairment, tingling in her hands and legs, body aches and pains, disturbed sleep, dizziness, and forgetfulness. AR 38. However, he found that Plaintiff's allegations about the intensity, persistence, and limiting effects of those symptoms were not entirely credible. AR 39.

The ALJ reviewed Plaintiff's medical record and concluded that her pain complaints are consistent with having fibromyalgia, but that no treating or examining doctor had suggested functional limitations that were more restrictive than those described by Dr. McMillan and

9

incorporated in the ALJ's RFC. AR 40. Moreover, the ALJ found that the medical record showed that Plaintiff was not receiving the level of care that one would expect from a patient who was totally disabled by her fibromyalgia. AR 40. To the contrary, the ALJ noted that Plaintiff's doctors had recommended that she engage in greater physical activity to treat her symptoms. AR 40. Accordingly, the ALJ did not find Plaintiff's subjective pain complaints completely credible and determined that his RFC was supported by Dr. McMillian's examination and opinion and the longitudinal medical record. AR 40.

In finding that Plaintiff was capable of performing her past relevant work as an administrative clerk and therefore was not disabled, the ALJ relied on the vocational expert's opinion that an individual with the above described RFC could perform that job. AR 40. In addition, the ALJ noted that the state agency also concluded that Plaintiff could perform her past relevant work. AR 40. Based on these findings, the ALJ found that Plaintiff is not disabled.

## II. LEGAL STANDARD

This Court has the authority to review the Commissioner's decision to deny benefits. 42 U.S.C. § 405(g); see Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). Substantial evidence is defined as relevant evidence that a reasonable person might accept as adequate in support of a conclusion; it is "more than a mere scintilla but less than a preponderance." Id.; see also Richardson v. Perales, 402 U.S. 389, 401 (1971); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir.1997). Reasoning not relied upon by the ALJ cannot be relied upon to affirm the ALJ's decision. See Cequerra v. Sec'y, 933 F.2d 735, 738.

To determine whether the ALJ's decision is supported by substantial evidence, courts review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's decision. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995.) If the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. Id. at 1030-40. The trier of fact, not the reviewing court, must resolve conflicting evidence, and if the evidence can support either outcome, the reviewing court may not substitute its judgment for the judgment of the ALJ. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); see also Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992). An ALJ's decision will not be

reversed for harmless error. Id.; see also Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991).

### A. Definition of Disability

In order to qualify for disability insurance benefits, a plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration ("SSA") utilizes a five-step sequential evaluation process in making a determination of disability. 20 C.F.R. § 404.1520; see Reddick, 157 F.3d 715, 721. If the SSA finds that the claimant is either disabled or not disabled at a step, then the SSA makes the determination and does not go on to the next step; if the determination cannot be made, then the SSA moves on to the next step. 20 C.F.R. § 404.1520.

### B. Determination of Disability

First, the SSA looks to the claimant's work activity, if any; if the claimant is engaging in substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(I). Second, the SSA considers the severity of impairments; the claimant must show that he has a severe medically determinable physical or mental impairment (or combination of severe impairments) which has which has lasted or is expected to last twelve months or end in death. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the SSA considers whether a claimant's impairments meet or equal a listing in 20 C.F.R. Part 404 Appendix 1. If so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the SSA considers the claimant's residual functional capacity ("RFC") and past relevant work. If the claimant can still engage in past relevant work, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Fifth, the SSA considers whether, in light of the claimant's RFC and age, education, and work experience, the claimant is able to make an adjustment to another occupation in the national economy; if so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c).

The claimant bears the burden on steps one through four. Reddick, 157 F.3d at 721. If a claimant establishes an inability to perform her prior work at step four, the burden shifts to the SSA to show that the claimant can perform other substantial work that exists in the national

economy at step five. Id.

## III. DISCUSSION

### A. Credibility Determination

The first basis for Plaintiff's motion for summary judgment is that the ALJ committed error when he made a negative credibility finding against Plaintiff's testimony regarding pain. Specifically, she contends that the ALJ did not provide clear and convincing reasons and that he failed to consider the entire case record when making his negative credibility determination.

In order to find a claimant's testimony regarding symptoms unreliable, the ALJ is "required to make 'a credibility determination with findings sufficiently specific to permit the courts to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002)). The Ninth Circuit requires the ALJ to conduct a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)) (internal citations omitted). If the claimant has presented evidence to satisfy the first step, "and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so.'" Garrison, 759 F.3d at 1014-15 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ may consider many factors when weighing the claimant's credibility, including "'(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.'" Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Garrison, 759 F.3d at 1015 (quoting Moore v.

12

Comm'r of Soc. Sec. Admin, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ determined that Plaintiff had medically determinable impairments, so he was required to provide clear and convincing reasons in support of his adverse credibility finding. See Tommasetti, 533 F.3d at 1039. In finding that Plaintiff's fibromyalgia constituted a severe impairment, the ALJ credited her testimony about her fibromyalgia symptoms, but cited multiple reasons for finding that these symptoms did not render her totally disabled. To start, the ALJ explained that her treating doctors diagnosed her with fibromyalgia but no treating doctor suggested functional limitations that were more restrictive than the light work restrictions that were described by Dr. McMillian in his functional assessment. At least two of her treating doctors recommended that she increase her physical activity to alleviate her symptoms of fibromyalgia. These recommendations show that her doctors considered her capable of greater activity and that, importantly, greater activity would be beneficial to her condition.

Plaintiff contends that the ALJ's finding about her conservative treatment is not a clear and convincing reason for discounting her credibility because the conservative treatments of increased physical activity are not equivalent to the RFC assessment that Plaintiff is capable of sitting, standing, or walking for six hours of an eight-hour work day. As Defendant points out, the ALJ did not find that these recommended treatments equated to activities of daily living. Instead, the ALJ found that her complaints about pain and fatigue were not credible in light of the limited treatment she received for her symptoms. See Edginton v. Colvin, 625 Fed. App'x 334, 336 (9th Cir. 2015) ("The ALJ reasonably concluded that [claimant's] treatment for his back condition was 'routine and conservative' and not the treatment expected for an individual suffering from the disabling symptoms that [claimant] described."); Hanes v. Colvin, 651 Fed. App'x 703, 705 (9th Cir. 2016) (discounting pain complaints given conservative treatment plan of minimal medication, limited injections, physical therapy, and gentle exercise).

Over the last two decades as fibromyalgia has come to be more recognized and better understood, the Ninth Circuit has had several occasions to consider disability claims that are based on fibromyalgia and its attendant symptoms of pain and fatigue. One line of cases in particular highlights the evolving understanding of fibromyalgia and the available treatments for the

13

condition. In Revels v. Berryhill, 874 F.3d 648, 667 (9th Cir. 2017), the Ninth Circuit found that the ALJ erred by concluding that the treatment the plaintiff was receiving was "conservative" where the claimant with diagnosed fibromyalgia was prescribed "a variety of medications for her pain, including Valium, Vlector, Soma, Vicodin, Percocet, Neurontin, Robaxin, Trazodone, and Lyrica" and "received facet and epidural injections in her neck and back, as well as steroid injections in her hands." While Plaintiff's treatment is more in line with the treatment addressed seventeen years ago in Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) in which the Ninth Circuit found that the main recommendation for the avoidance of strenuous activity qualified as "conservative," the Ninth Circuit has recently expressed skepticism that its opinion in Rollins could hold up in light of the more fully developed understanding of fibromyalgia that is now accepted in the medical community and embodied in the Social Security regulations. See Revels, 874 F.3d at 667 n.6. Indeed the most recent medical opinion from Plaintiff's treating physician, rheumatologist Dr. Hendler, stated that she has "classic fibromyalgia" and she has tried several standard treatments for fibromyalgia without any noticeable benefit. AR 674. There is no evidence in the record that any greater level of care for fibromyalgia would be available to Plaintiff to relieve her pain symptoms. Therefore, the Court concludes that Plaintiff's level of treatment was not a clear and convincing reason to discount her symptoms as it failed to take into account the nature of her condition and the treatment available for it.

The ALJ also rested his credibility determination on the finding that her reported symptoms were not consistent with the overall medical record. Recent cases addressing credibility determinations where the claimant has fibromyalgia also seriously undermine the lack of supporting objective medical evidence as a valid reason for discounting a fibromyalgia patient's subjective complaints. In Hamilton-Carneal v. Colvin, 670 Fed. App'x 613 (9th Cir. 2016), for example, the Ninth Circuit reversed the district court's affirmance of the denial of a claimant's disability insurance application relating to her fibromyalgia diagnosis. The ALJ had discounted the claimant's "subjective complaints and limitations" as "simply out of proportion to and not corroborated by the objective medical evidence." Id. at 614. The Ninth Circuit found that this was error because the disease is poorly understood, diagnosed entirely on the patient's reports of

14

pain and other symptoms, and there are no laboratory tests to confirm the diagnosis. Id. This holding is echoed in the Social Security regulations' focus on a claimant's complaints of pain and evidence that other causes have been excluded as the underlying cause for the complaints, along with clinical observations that are consistent with fibromyalgia including tender points or other repeated manifestations of the disease such as fatigue, cognitive difficulties, and depression. See SSR 12-2p. Here, the ALJ's opinion did not consider the fact that fibromyalgia is an incurable condition and that it is usually diagnosed and treated exclusively based on a patient's subjective complaints about her symptoms. The ALJ also did not address the fact that Plaintiff has been prescribed and used several commonly prescribed medications for fibromyalgia, none of which produced strong results for the alleviation of Plaintiff's condition.

Plaintiff does not squarely address the fact that the ALJ concluded that her complaints of disabling pain and fatigue should be partially discredited because they were not consistent with other aspects of the overall medical record. The Court's review of the overall medical records reflect Plaintiff's ongoing complaints that she suffered from body pains and fatigue that she reported limited her ability to live a fully-functioning life. She raised these symptoms with her doctors starting in 2010, and she continued doing so through 2015, which are the latest medical records in the administrative record. Multiple doctors' diagnosis of fibromyalgia, a condition that is characterized by widespread body pain and fatigue, indicate that Plaintiff's doctors credited her complaints.

However, there is some evidence that is not entirely consistent with Plaintiff's complaints. For example, the ALJ reviewed two physicians' analysis of x-rays taken of Plaintiff's elbows, hips, and spine. Both physicians noted normal results or, at most, mild signs of arthritis. The diagnostic results from Plaintiff's treating physicians are consistent with Dr. McMillian's evaluation of Plaintiff's functional limitations, as noted by the ALJ. But, as the Ninth Circuit recognized in Revels, normal examination results "are perfectly consistent with debilitating fibromyalgia" for the specific reasons that it is "diagnosed 'entirely on the basis of patients' reports of pain and other symptoms,'" "'there are no laboratory tests to confirm the diagnosis,'" and "fibromyalgia is diagnosed, in part, by evidence showing that another condition does not

15

account for a patient's symptoms." Revels, 874 F.3d at 666 (quoting Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004)).[2]

The ALJ provided no reasons for discrediting Plaintiff's complaints of pain and fatigue aside from the lack of corroborating objective medical evidence and the treatments that he considered conservative. These reasons are insufficient to meet the high "clear and convincing" reasons standard. In failing to provide any additional reasons, the ALJ erred.

### B. Layperson Testimony

Plaintiff argues that the ALJ also erred by failing to consider the written testimony of her husband Neil Regan about her medical condition. At the ALJ's request, Mr. Regan submitted a letter setting forth his testimony which was received by the Social Security Administration on August 3, 2015. AR 399-401. Mr. Regan stated broadly that Plaintiff "is in pain most of the time and is unable to do much without exhaustion." AR 400. He went on to conclude that "[i]f she can't function at home it would be not plausible in a job environment" and he felt that "her attendance due to illness would be outside the parameters allowed to keep a job." AR 400. He also asked the ALJ to take into consideration several points about her medical record and treatment, including the fact that fibromyalgia is not curable, she has been diagnosed with fibromyalgia, her x-rays show an arthritic condition, she has been prescribed and has taken Lyrica without success, and only a rheumatology specialist knew the exact tests to conduct to diagnose

---

[2] The Court does not find Plaintiff's argument about her inability to obtain additional care because of her financial situation and insurance coverage to be particularly persuasive. Plaintiff's motion cites letters she wrote to the ALJ before the hearing, stating that she was having trouble seeing a rheumatology specialist because only a limited number of doctors accepted her insurance and there were wait lists to see them. AR 369, 371. However, Plaintiff was able to see at least two rheumatology specialists (Dr. Rasheed and Dr. Neuwalt) in 2014 and 2015, both of whom diagnosed her with fibromyalgia. Plaintiff was also treated by Dr. Hendler in July 2015, before the ALJ's hearing, and his diagnosis of fibromyalgia and comments about Plaintiff's unsuccessful use of commonly-prescribed fibromyalgia medications were entered into the record and addressed in the ALJ's opinion. Moreover, Plaintiff's early troubles paying for health insurance appear to have been at least partially relieved by her access to insurance through the Covered California program because her medical records from 2012 through 2015 indicate that she had frequent contact with her primary care physicians and specialists and received the recommended diagnostic testing, such as x-rays and laboratory work. Finally, this argument about Plaintiff's alleged difficulty accessing health care is not directly responsive to the ALJ's contention that the conservative treatment that her doctors *recommended for her* (and not what was recommended but she was unable to receive) supports a finding that her symptoms are not as serious as alleged.

fibromyalgia and the Social Security doctor did not have the appropriate experience to diagnosis Plaintiff accurately. AR 400.

"Lay testimony as to a claimant's *symptoms* is competent evidence which the Secretary must take into account, unless he expressly determines to disregard such testimony, in which case 'he must give reasons that are germane to each witness.'" Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (quoting Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)) (emphasis in original). Lay testimony about a claimant's medical diagnoses, however, is "beyond the competence of lay witnesses and therefore do not constitute competent evidence." Id. If the ALJ does not take into account "competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Commissioner, 454 F.3d 1050, 1056 (9th Cir. 2006).

Defendant cites Valentine v. Astrue, 574 F.3d 685 (9th Cir. 2009), for the proposition that no error was committed because Mr. Regan's testimony was duplicative of Plaintiff's testimony and the ALJ gave valid reasons for discounting Plaintiff's testimony. However, Valentine is not applicable here because the ALJ's opinion in that case specifically addressed the lay person's duplicative testimony, whereas the ALJ's opinion in this case did not even mention Mr. Regan's testimony.

Here, the ALJ's opinion did not reference Mr. Regan's letter or provide any "germane" reasons for disregarding it. Certain portions of the letter discussed Plaintiff's medical diagnosis and did not need to be considered by the ALJ in reaching his disability determination. See Nguyen, 100 F.3d at 1467. Other portions, however, provided Mr. Regan's assessment of Plaintiff's alleged symptoms of severe pain and fatigue, and his perception that these symptoms impacted her ability to work. In Stout, the Ninth Circuit found that the ALJ's failure to discuss similar lay testimony about how the claimant's impairments affected his ability to work constituted reversible error. See Stout, 454 F.3d at 1054-56. In this case, if the ALJ fully credited Mr. Regan's written testimony, particularly the opinion that Plaintiff's impairments would keep her from work several days a month, then it is possible that the ALJ would have come to a

different conclusion about whether Plaintiff is disabled. The ALJ fully credited the vocational expert's testimony in his opinion, and the vocational expert testified that Plaintiff would not be able to do her past relevant work or any other work in the national economy if she missed several days of work each month. AR 84. Thus, his failure to appropriately consider Mr. Regan's letter in the course of rendering his decision was not harmless error.[3]

### C. Whether to Remand or Award Benefits

Because the Court has concluded that the ALJ erred in his credibility determination and his failure to consider Mr. Regan's written testimony, the final question is whether to remand for additional proceedings or award benefits. "The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). "'[I]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded'" for further proceedings. Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014) (quoting Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981)). However, a court may also reverse and remand with instructions to calculate and award benefits "when it is clear from the record that a claimant is entitled to benefits." Id. The Ninth Circuit uses a three-part test to determine whether a court should remand to an ALJ with instructions to calculate and award benefits: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for reject evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Id. at 1020. There is "flexibility" in applying the credit-as-true rule which allows the district court to remand for further proceedings even when all three conditions are satisfied "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social

---

[3] Plaintiff's motion originally raised the additional argument that the ALJ erred in not obtaining a medical opinion in abdication of his "independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)). In her reply brief, Plaintiff abandoned this argument, so the Court need not address it.

Security Act." Id. at 1021. "[E]ven when those 'rare circumstances'" identified in the three-part test are satisfied, "'[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion.'" Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1101-02 (9th Cir. 2004) (quoting Swenson v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989)).

In this case, it is not clear that all three conditions of the credit-as-true test are satisfied and that Plaintiff is entitled to benefits. Principally, the issue of whether there are additional reasons for discounting Plaintiff's credibility should be resolved by an ALJ who has the benefit of assessing Plaintiff's testimony in person. For example, not all of Plaintiff's testimony was consistent with her stated symptoms, such as the testimony that she recently drove from her home in the San Francisco Bay area to Los Angeles and back. On remand, the ALJ may also be able to take Mr. Regan's testimony in person, rather than depend upon a written letter, which would similarly provide a more accurate assessment of the weight it should be given. Moreover, although the Court has not ruled on whether it was error to not solicit one in the first instance, it is possible that the ALJ would benefit, on remand, from obtaining an additional medical opinion from a fibromyalgia specialist. For these reasons, the Court cannot say with certainty that further administrative proceedings would serve no useful purpose and exercises its discretion to remand for further proceedings.

## IV. CONCLUSION

For these reasons, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's motion for summary judgment, and remands the case for further administrative proceedings to reconsider the issue of Plaintiff's credibility as to the intensity, persistence, and limiting effects of her symptoms, as well as Plaintiff's husband's written testimony.

**IT IS SO ORDERED.**

Dated: March 28, 2018

ELIZABETH D. LAPORTE
United States Magistrate Judge